IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAACO FRANCHISING, INC.,<br>Plaintiff,<br><br>v.<br><br>PIERRE PHILIPPE AUGUSTIN, et al.,<br>Defendants. | Civil Action No. 09-4548 |

MEMORANDUM

April 20, 2010                                                                                                               Pollak, J.

      Maaco Franchising, Inc. (Maaco) brought suit for claims arising under the Lanham Act, 15 U.S.C § 1051, *et seq.*,[1] and state law against Pierre Philippe Augustin and his wife Virginie Augustin, and against their company Phil's Auto Body, Inc. (in the aggregate, the Augustin Defendants), for breach of a franchise agreement between the parties. Maaco has moved for a preliminary injunction to enforce the franchise agreement's covenant not to compete and to enjoin alleged misappropriation of its purported trade secrets (docket no. 4). After expedited discovery, the Augustin defendants have responded to Maaco's motion for a preliminary injunction (docket no. 18). Maaco then

---

[1] The present preliminary injunction motion raises issues only under state law regarding a covenant not to compete and under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq*.

1

replied (docket no. 45). A two-day hearing was held to take testimony. The motion is now ripe for disposition. As explained herein, I will grant the motion in part and deny the motion in part.

I.  **Facts and Procedural History**

Plaintiff, Maaco Franchising, licenses and trains franchisees to use the Maaco name and methods for auto body repair and painting. In October of 2002, defendants Pierre and Virginie Augustin entered into a franchise agreement with Maaco's predecessor in interest, Maaco Enterprises, Inc, to last fifteen years. Under the franchise agreement, the Augustins were required to i) pay a weekly royalty fee equal to a percentage of their gross receipts, ii) submit weekly reports of their gross receipts to Maaco, and iii) contribute to a joint advertising fund. Franchise Agreement ¶¶ 4-5, 11. As part of the franchise agreement, the Augustins agreed not to disclose Maaco's trade secrets. Franchise Agreement ¶¶ 10, 17.C.

In addition, the franchise agreement contained a covenant not to compete, which states:

> for a period of one (1) year after the expiration or termination of this [Franchise] Agreement, regardless of the cause of termination, or the date upon which Franchisee cease to operate the business franchised hereunder following termination or expiration of this [Franchise] Agreement, whichever is later, Franchisee shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation:
>
> > (1) Divert or attempt to divert any business or customer of the business franchised hereunder to any competitor, by direct or indirect

> inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System[;]
>
> (2) Employ or seek to employ any person who is that time employed by Maaco or any other franchisee of Maaco, or otherwise directly or indirectly to induct such person to leave his or her employment thereat[;]
>
> (3) Own, maintain, engage in, be employed by, lease real estate to, finance, or have any interest in any business specializing in whole or in part in providing automobile painting or body repair services or products at the premises of the Center or within a ten (10) mile radius of any existing or proposed Maaco location.

Franchise Agreement, at ¶ 17.B(1)-(2), 17.C.

The Augustin defendants failed to make payments to Maaco under the franchise agreement, report their weekly gross receipts, or make their advertising contributions, which resulted in Maaco terminating the franchise agreement after notice and an opportunity to cure on April 9, 2009. The Augustins continued to operate the center until June 30, 2009. Maaco then took control of the Maaco franchise formerly run by the Augustins and refranchised it to David Stefan.

Defendant Pierre Augustin testified at the hearing that Maaco failed to fulfill several promises made to him. He testified that Maaco failed to pay for his relocation from Boston to Florida as promised, that Maaco failed to provide him a lighted sign, and that Maaco did not sufficiently aid him in renegotiating his rent or selling his franchise.

Pierre Augustin, after vacating the premises of the Augustins' former Maaco

franchise, started a competing auto body shop one half-mile from their former Maaco franchise. Maaco alleges this operation entails use of the "Maaco System" (its purported trade secrets) and has been advertised as "Palm Beach Auto formerly Maaco Auto Pain[t]ing." Am. Compl. ¶¶ 45, 49.

On October 2, 2009, Maaco filed suit against the defendants for violation of the franchise agreement and for preliminary and permanent injunctions to enforce the non-compete clause and to protect Maaco's trade secrets. Maaco has also sued for trademark infringement and unfair competition, breach of the covenant of confidentiality, breach of the covenant of good faith and fair dealing, conspiracy, tortious interference, and unjust enrichment. Am. Compl. ¶ 50-51.

## II. Analysis

The test for an injunction requires meeting the traditional four factors of: 1) the likelihood that the plaintiff will prevail on the merits, 2) the extent to which the plaintiff is irreparably harmed by the conduct complained of, 3) the extent to which the defendant will suffer irreparable harm if the injunction is issued, and 4) the public interest. *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 803 (3d Cir. 1998).

### A. Likelihood of Success on the Merits

Neither party challenges the Agreement's choice-of-law clause, which requires the application of Pennsylvania law. *See* Franchise Agreement ¶ 24.A. Thus, determining the plaintiff's likelihood of success on the merits, I must examine whether Maaco is likely

4

to establish that the covenant not to compete is reasonable and that the defendants misappropriated trade secrets under Pennsylvania state law. As state law governs, I will briefly state the principles I must apply when interpreting state law. A federal court must, of course, follow controlling decisions of the Pennsylvania Supreme Court, but if no such decision is controlling the court must predict how the Pennsylvania Supreme Court would decide if that court were to have occasion to address the issues. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009). "In making such a prediction, [the court must] consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand." *Id.*

For a covenant not to compete to be valid under Pennsylvania law three requirements must be met: "(1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory." *Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 210 (Pa. 1976). None of the parties disputes that the first two requirements are present, since the covenant not to compete was incident to a franchise agreement with valuable consideration on both sides. However, defendants contend that the covenant is unreasonable in both time and territory.

Based on controlling Pennsylvania precedent, I find the covenant not to compete to

be reasonable as to both time and territory. The covenant, by its terms, lasts from one year from the later of "the expiration or termination of this [Franchise] Agreement, . . . or the date upon which Franchisee cease to operate the business franchised." The Pennsylvania Supreme Court has found covenants lasting three years in similar contracts to be reasonable. *Piercing Pagoda*, 351 A.2d at 213. Given the time needed to bring a replacement franchise up to speed and to protect the franchisor's interests, I find the one-year term to be reasonable.

I also find the scope of the covenant reasonable. As argued in Maaco's proposed conclusions of law, "the covenant only restricts the Augustin Defendants from operating a business substantially similar to their Maaco franchise within a ten mile radius of their Center." Pl's. Proposed Findings of Fact and Conclusions of Law , at 26.[2] Employees of Maaco testified that research has shown that a Maaco franchise can draw customers from up to ten miles from the franchise. Thus, the ten-mile radius is reasonable in its geographic scope.

Although the one-year period is reasonable, the parties dispute whether the one year has commenced, and if it did so, when. The terms of the covenant not to compete list two possible dates for the commencement of the covenant–"the expiration or termination of this [Franchise] Agreement," which would be April 9, 2009, or "the date

---

[2] As Maaco has asked for enforcement of the covenant within a ten-mile radius of the Lake Park Center, I need not address whether enforcement of the ten mile radius from all other Maaco franchisees would be reasonable.

upon which Franchisee cease[d] to operate the business franchised," which would be June 30, 2009, the date Pierre Augustin vacated the Augustins' former Maaco site. As the covenant calls for the later date to be used, I conclude that the one-year period began to run on June 30, 2009 and will expire on June 30, 2010.

Maaco argues that the covenant should not begin to run until Pierre Augustin ceases to operate any auto painting and body repair shop or one-year from this court's order. Maaco argues that the failure to abide by the covenant and alleged misconduct during litigation require an equitable extension of the covenant. Under Pennsylvania law covenants not to compete are to be strictly construed since they are "a partial restraint upon the free exercise of trade." *Hayes v. Altman*, 266 A.2d 269, 271 (Pa. 1970). The Pennsylvania courts have disapproved of any extension of a covenant not to compete except by the covenant's own terms. *See Davis v. Buckham*, 421 A.2d 427, 431 (Pa. Super. Ct. 1980) ("Since covenants not to compete must be strictly construed . . . it is questionable whether in any case a chancellor would be justified in extending the period of restriction."). The Pennsylvania Supreme Court, when faced with the issue, indicated it might allow for an extension if misconduct directly prevents the covenant from being enforced. *Hayes*, 266 A.2d at 272. However, the court declined to authorize extension of the covenant when "the record indicates that there has been no fraud or unnecessary delay caused by the appellant which unjustly permitted the . . . restraint to expire." *Id.* Here, Maaco has not established that any of the alleged misconduct of Pierre Augustin during

7

the litigation directly caused delay in enforcement of the injunction.

Similarly, violation of a covenant not to compete does not extend the period of a covenant. *See Hayes*, 266 A.2d at 271-71. If Maaco wanted such protection, it could have included language extending the covenant in the event it was violated. The Pennsylvania Supreme Court has found a provision extending the covenant not to compete if it were violated to be reasonable. *Worldwide Auditing Services, Inc. v. Richter*, 587 A.2d 772, 776-77 (Pa. 1991).

**B.     Remaining Elements**

Enforcement of the covenant not to compete would also satisfy the remaining elements required for a preliminary injunction–irreparable harm, balancing of the equities, and the public interest. Calculating damages from the loss of business or loss of reputation is at best difficult, if not impossible, and thus Maaco would be irreparably harmed by a failure to grant injunctive relief. *See Quaker Chemical Corp. v. Varga*, 509 F. Supp. 2d 469, 478-79 (E.D. Pa. 2007) (finding that the departure of a representative of the plaintiff company to join a competitor threatened irreparable harm since the representative carried with him the company's goodwill and knowledge of its operation).

The defendants do not argue that the harm to them, if an injunction is granted, would outweigh the harm to the plaintiff, if the injunction is not granted, or that enforcement of the covenant is not in the public interest. I find that the harm to Maaco outweighs the harm to the Augustins. The Augustins were aware of the potential harm

8

when they 1) signed the franchise agreement and 2) opened a competing shop following the termination of the franchise agreement. Additionally, the public interest is served by fulfilling the contractual interests of the parties and maintaining the viability of franchise systems. Thus, I will grant a preliminary injunction enforcing the covenant not to compete, which will expire on June 30, 2010.

### C. Trade Secrets

The parties dispute whether Maaco is entitled to an injunction to protect itself from the defendants' misappropriation of trade secrets under Pennsylvania's Uniform Trade Secrets Act (PUTSA), 12 Pa. C.S.A. § 5301 *et seq*. PUTSA defines a trade secret as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C.S.A. § 5202. The "crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner." *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1070 (Pa. Super. Ct. 2003). Some additional factors for a court to consider in determining whether given information is a trade secret are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of

9

the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1255-56 (3d Cir. 1985).

Tom Monaghan, Maaco's Vice President of Operations, testified that Maaco believed its process of starting and running a franchise to be a trade secret. However, Monaghan and Maaco have not identified any aspect of the Maaco System that meets the requirement of substantial secrecy, since information was available to customers of Maaco and the public at large about the aspects of the Maaco System that Maaco claims to be proprietary. Thus, I cannot find Maaco proved a sufficient likelihood of success on the merits to entitle it to an injunction against misappropriation of its purported trade secrets.

### D. Unclean Hands

The defendants argue that Maaco is barred from seeking equitable relief by the doctrine of unclean hands. "To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff." *S&R Corp. v. Jiffy Lube Int'l.*, 968 F.2d 371, n.7 (3d Cir. 1992) (citing *Castle v. Cohen*, 676 F. Supp. 620, 627 (E.D. Pa.1987)). "The doctrine only applies where the wrongdoing directly affects the relationship subsisting between the parties and is directly connected with the

matter in controversy." *In re Estate of Pedrick*, 482 A.2d 215, 223 (Pa. 1984). Even if I were to find that Maaco promised and failed to provide assistance with moving expenses, signage, renegotiating the rent, and selling the franchise, I would conclude that the failures alleged do not rise to the level of the fraud, unconscionability, or bad faith that would bar enforcement of the covenant not to compete.

### III. Conclusion

For the reasons stated above, I conclude that the plaintiff's motion for preliminary injunction should be granted in part and denied in part. Maaco's request for a preliminary injunction enforcing its covenant not compete is granted with respect to a ten-mile radius around the Augustins' former Maaco franchise; the requirement not to compete will expire on June 30, 2010. The request for a preliminary injunction barring misappropriation of Maaco's trade secrets is denied. An appropriate order accompanies this memorandum.